UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDERICK CHARLES PETTEY and
HEIDI PETTEY,

                    Plaintiffs,

                                            Case Number 11-13779
v.                                      Honorable David M. Lawson

CITIMORTGAGE, INC.,

                    Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Plaintiffs Frederick and Heidi Petty have filed the present action against an assignee of their promissory note and mortgage alleging wrongful foreclosure. The assignee, defendant CitiMortgage, filed a motion to dismiss, which is now before the Court. CitiMortgage purchased the plaintiffs' residential property at a sheriff's sale on January 11, 2011 and initiated a summary eviction proceeding to obtain possession. The plaintiffs then filed suit against the defendant in state court seeking to quiet title to the property (Count 1) and bringing claims of unjust enrichment (Count 2), breach of Michigan Compiled Laws § 600.3205 (Count 3), and deceptive act and unfair practices (Count 4). The defendant removed the case and filed the present motion to dismiss, arguing that the plaintiffs lack standing to challenge the sheriff's sale, the complaint does not state claims upon which relief may be granted, and the plaintiffs' claims are barred by the doctrine of laches. The motion was scheduled for oral argument in January 2012, but the Court adjourned it at the plaintiffs' request so that they could explore the need to add another party. No motion to amend the complaint was filed, and the Court heard argument on the motion on August 16, 2012. The Court now finds that although the defendant's standing argument is meritless, the plaintiffs have failed to state claims

upon which relief may be granted.  The defendant had authority under Michigan Compiled Laws § 600.3204 to foreclose by advertisement; the plaintiffs do not allege any notice defect; the defendant was not under a duty to modify the loan or send the plaintiffs calculations determining whether they qualified for a modification; and the plaintiffs have not alleged facts to make a claim, under any Michigan law, for deceptive acts or unfair practices plausible on its face.  Therefore, the Court will grant the motion to dismiss and dismiss the case.

I.

The dispute centers around the real property commonly known as 1525 West Marshall Street, Ferndale, Michigan.  The plaintiffs allege in their complaint that they purchased the property in the early 1990s and they currently reside there.  On November 10, 2006, the plaintiffs closed a loan in the amount of $163,900 with non-party Ross Mortgage Corporation and executed a promissory note, which was secured by a mortgage on the Property.  Mortgage Electronic Registrations Systems, Inc. (MERS), as the nominee for Ross Mortgage and its successors and assigns, was named the mortgagee.  Although the complaint does not allege specifically that defendant CitiMortgage is the servicer of the loan, the complaint alleges that the defendant was the entity through which they allegedly sought a loan modification.

MERS, as nominee for lender and lender's successors and assigns, assigned the mortgage to CitiMortgage on April 23, 2010, and CitiMortgage recorded the assignment with the Oakland County register of deeds on May 6, 2010.  The defendant contends that the plaintiffs defaulted on their repayment obligations under the Note and Mortgage.  Although the complaint does not acknowledge that the plaintiffs defaulted on their loan, it does allege that a sheriff's sale took place.

-2-

On May 8, 2010, Orlans & Associates, P.C., as attorney for CitiMortgage, posted notice of CitiMortgage's intent to foreclose on the Property and published notice in the Oakland Press on May 5, 12, 19, and 26, 2010. The notice of foreclosure stated that the plaintiffs owed $166,385.36 on their mortgage and that a foreclosure sale would take place on June 8, 2010. CitiMortgage foreclosed on the property and purchased it at a sheriff's sale on January 11, 2011 for $179,939.29.

On January 5, 2011, Danielle Jackson of Orlans Associates, P.C., as attorney for CitiMortgage, signed an affidavit of compliance, which states, in part:

2. This statement is being filed to show compliance with MCL § 600.3204 and 600.3205 with regard to the foreclosure by advertisement of the loan herein described, for the property . . . .

3. On or about November 10, 2006 a mortgage was executed between Frederick Charles Pettey and Heidi A. Pettey aka Heidi A. Pettey, husband and wife to Mortgage Electronic Registration Systems, Inc., as nominee for lender and lender's successors and/or assigns for $163,900.00 on November 10, 2006, recorded November 29, 2006 in Liber 38441, Page 795, Oakland County Records.

4. Said mortgage is currently held by CitiMortgage, Inc.

5. The law firm of Orlans Associates, P.C. was retained to foreclose the above mortgage by advertisement.

6. In processing the foreclosure for the above mortgage, Orlans Associates, P.C. mailed a written Notice to the borrower(s) pursuant to MCL § 600.3205a(1) and (2).

7. A form of the above Notice was also published in a qualified newspaper in the manner provided in MCL § 600.3205a(4).

8. Neither the borrower(s) nor a housing counselor requested the authorized Designee to set up a meeting to modify the mortgage, within the required time period as set forth in MCL § 600.3205a(1)(d).

9. More than 24 days passed since the written Notice was sent to the borrower(s), pursuant to MCL § 600.3205a(1).

10. The Notice of Foreclosure was not published until Orlans Associates, P.C. complied with MCL § 600.3204(4).

-3-

Mot. to Dismiss, Ex. D, Statement of Compliance. On the same day, Danielle Jackson signed a document entitled "Affidavit of Purchaser" that stated the amount required for redemption was $179,939.29, plus interest at the rate of 6% from January 11, 2011, at a per diem rate of $29.58, plus additional expenses for taxes, redemption of senior liens, homeowner assessments, insurance premiums, and a redemption servicing fee.

The property was sold at a sheriff's sale on January 11, 2011 for $179,939.29. The statutory redemption period expired on July 11, 2011. CitiMortgage initiated a summary eviction proceeding to obtain possession of the Property.

On August 9, 2011, the plaintiffs filed their complaint in the Oakland County, Michigan circuit court. The defendant removed the case on August 30, 2011 based on diversity jurisdiction and filed the present motion on September 27, 2011.

## II.

"The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). Under Rule 12(b)(6), the complaint is viewed in the light most favorable to the plaintiff, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228-29 (6th Cir. 1997) (quoting *Columbia Nat'l Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "However, while liberal,

this standard of review does require more than the bare assertion of legal conclusions." *Columbia Nat'l Res., Inc.*, 58 F.3d at 1109.

> To survive a motion to dismiss, [a plaintiff] must plead "enough factual matter" that, when taken as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Plausibility requires showing more than the "sheer possibility" of relief but less than a "probab[le]" entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Ashcroft v. Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Under the new regime ushered in by *Twombly* and *Iqbal*, pleaded facts must be accepted by the reviewing court but conclusions may not be unless they are plausibly supported by the pleaded facts. "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief and must be disregarded. *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555). However, as long as a court can "'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Fabian*, 628 F.3d at 281 (quoting *Iqbal*, 556 U.S. at 678).

Consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss."

*Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n.1 (6th Cir. 2010). Even if a document is not attached to a complaint or answer, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr.*, 508 F.3d at 335-36. Further, where the plaintiff does not refer directly to given documents in the pleadings, if those documents govern the plaintiff's rights and are necessarily incorporated by reference then the motion need not be converted to one for summary judgment. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (holding that plan documents could be incorporated without converting the motion to one for summary judgment even though the complaint referred only to the "plan" and not the accompanying documents). In addition, "[a] court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010) (quoting *Commercial Money Ctr., Inc.*, 508 F.3d at 335-36).

The Court may consider the sheriff's deed and Danielle Jackson's statement of compliance without converting the motion into one for summary judgment because the plaintiffs attached them to the complaint. The defendant, in its motion to dismiss, attached several documents, including the mortgage, the note, the assignment of the mortgage, Traci Ren's affidavit of posting on the Property, the Oakland Press representative's affidavit of posting, and Danielle Jackson's affidavit of purchaser. The Court may consider these documents without converting the motion into one for summary judgment because these documents either are referred to in the pleadings, govern the plaintiff's rights, or are in the public record.

A.  Standing

CitiMortgage argues that the plaintiffs lost standing to pursue any interest in the Property after the expiration of the six-month redemption period on July 11, 2011.  Citing *Overton v. Mortgage Electronic Registration Sys., Inc.*, No. 284950, 2009 WL 1507342 (Mich. Ct. App. May 28, 2009), CitiMortgage argues that at the expiration of the statutory redemption period, the purchaser of the sheriff's deed is vested with "all the right, title, and interest" in the property.

Standing is required in order to confer subject matter jurisdiction upon federal courts under Article III of the Constitution.  It is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  The Supreme Court has stated that the standing requirement "limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into 'a vehicle for the vindication of the value interests of concerned bystanders.'" *Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915-16 (6th Cir. 2002) (quoting *Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982)).  There are three constitutional requirements for standing.  *See Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000); *City of Cleveland v. Ohio*, 508 F.3d 827, 835 (6th Cir. 2007).  "To establish Article III standing, a litigant must show (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury will likely be redressed by a favorable decision." *Barnes v. City of Cincinnati*, 401 F.3d 729, 739 (6th Cir. 2005) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

In addition to the constitutional requirements, a plaintiff must also satisfy three prudential standing requirements.  *See City of Cleveland*, 508 F.3d at 835.  First, a plaintiff must "assert his own legal rights and interests, and cannot rest his claim for relief on the legal rights or interests of

third parties." *Warth*, 422 U.S. at 499 (citations omitted).  Second, a plaintiff's claim must be more

than a "generalized grievance" that is pervasively shared by a large class of citizens.  *Coal*

*Operators*, 291 F.3d at 916 (citing *Valley Forge*, 454 U.S. at 474-75).  Third, in statutory cases, the

plaintiff's claim must fall within the "zone of interests" regulated by the statute in question.  *Ibid.*

"These additional restrictions enforce the principle that, 'as a prudential matter, the plaintiff must

be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted.'"  *Coal*

*Operators*, 291 F.3d at 916 (quoting *Pestrak v. Ohio Elections Comm'n*, 926 F.2d 573, 576 (6th Cir.

1991)).

The defendant relies on *Overton v. Mortgage Electronic Registration Systems*, No. 284950,

2009 WL 1507342 (Mich. Ct. App. May 28, 2009), to support its argument that the plaintiffs do not

have standing because they no longer retain a legal interest in the Ferndale property because the

redemption period has expired.  There is no merit to that argument.  First, the defendant's argument

relies on an incorrect notion of standing.  In *Langley v. Chase Home Finance LLC*, No. 10-604, 2011

WL 1130926 (W.D. Mich. Mar. 28, 2011), the court explained the defendant's mistake:

> Many Defendants suggest the basis for the ruling in *Overton* is a lack of Plaintiff's
> standing once the redemption period expires, but the Court of Appeals does not
> actually say this.  Nor would it seem like Article III standing could possibly be in
> doubt.  After all, the Plaintiffs in such cases are the last lawful owner and possessor
> of the property.  Moreover, they often remain in continuing possession of the
> property notwithstanding any Sheriff's sale and expiration of a redemption period.
> Moreover, Plaintiffs in such cases claim a continuing right to lawful ownership and
> possession based on defects in the process used by Defendants to divest them of
> those rights.  This certainly seems to satisfy the basic Article III requirement of
> "injury in fact," as well as any prudential considerations tied to a "zone of interests"
> analysis.  Indeed, it is hard to imagine a person with a better claim to standing to
> challenge the process at issue.  Of course, having standing to bring a claim does not
> mean you have a valid claim on the merits.  That is a different question.  *Overton* is
> best viewed as a merits decision, not a standing case.

*Langley*, 2011 WL 1130926, at *2 n.2.

Second, "[t]he [Michigan] Supreme Court has long held that the mortgagor may hold over after foreclosure by advertisement and test the validity of the sale in the summary proceeding." *Mfrs. Hanover Mortg. Corp. v. Snell*, 142 Mich. App. 548, 553, 370 N.W.2d 401, 404 (1985) (citing *Reid v. Rylander*, 270 Mich. 263, 267, 258 N.W. 630 (1935); *Gage v. Sanborn*, 106 Mich. 269, 279, 64 N.W. 32 (1895)). "Otherwise, the typical mortgagor who faces an invalid foreclosure would be without remedy, being without the financial means to pursue the alternate course of filing an independent action to restrain or set aside the sale." *Ibid.* (citing *Reid*, 270 Mich. at 267, 258 N.W. 630; 16 Michigan Law and Practice, Mortgages, § 174, pp. 438-39).

The Court finds that the plaintiffs allege continuing ownership of the property and satisfy the constitutional and prudential standing requirements.

### B. The Sheriff's Sale

The plaintiffs' main goal in this lawsuit is to have the sheriff's sale set aside and quiet title to the property in themselves. They allege that they are entitled to that relief because the foreclosure process was fundamentally flawed for several reasons. The defendant contends that the allegations in the complaint, even if taken as true, do not support any finding that would justify reversing the foreclosure process.

As the Michigan Court of Appeals recently explained, a mortgagor must clear a high hurdle to set aside a sheriff's sale.

> The Michigan Supreme Court has held that statutory foreclosures will only be set aside if "very good reasons" exist for doing so. *Markoff v. Tournier*, 229 Mich. 571, 575, 201 N.W. 888 (1925). "'[I]t would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside.'" *Sweet Air Investment, Inc. v. Kenney*, 275 Mich. App. 492, 497, 739 N.W.2d 656 (2007), quoting *United States v. Garno*, 974 F. Supp. 628, 633 (E.D. Mich., 1997). "Statutory foreclosures are a matter of contract, authorized by the mortgagor, and

ought not to be hampered by an unreasonably strict construction of the law." *White v. Burkhardt*, 338 Mich. 235, 239, 60 N.W.2d 925 (1953).

*Kubicki v. Mortgage Electronic Registration Systems*, 292 Mich. App. 287, 289, 807 N.W.2d 433. 434 (2011). The purported defect must be in the sale process itself. *See Reid*, 270 Mich. at 267, 258 N.W. at 631 (holding that only the sale procedure may be challenged after a sale); *Freeman v. Wozniak*, 241 Mich. App. 633, 636-38, 617 N.W.2d 46 (2000) (reversal of sheriff's sale improper without fraud, accident, or mistake in sale proceedings).

The plaintiffs' purported "errors," which, as discussed below, do not provide grounds to void the foreclosure, also do not support setting aside the sheriff's sale because the claimed errors are not in the sale process itself.

### 1. Authority to foreclose by advertisement

The defendant argues that the attacks on the mortgage foreclosure process do not support the plaintiffs' claims in counts one through three of the complaint because the noncompliance alleged in the complaint, even if true, would not invalidate the sheriff's sale. The defendant also insists that the plaintiffs have not identified any fraud or irregularity in any single requirement in the sheriff's sale process, and therefore the sheriff's sale cannot be overturned. Finally, the defendant contends that the plaintiff waited too long after the sheriff's sale before starting this lawsuit, and the eight-month gap renders them guilty of laches, which bars their claims. The plaintiffs dispute these arguments and point to the affidavit furnished by Danielle Jackson as evidence of noncompliance with the mortgage statute.

Foreclosure sales by advertisement are governed by statute. *Senters v. Ottawa Sav. Bank, FSB*, 443 Mich. 45, 50, 503 N.W.2d 639, 641 (1993). "Once the mortgagee elects to foreclose a mortgage by this method, the statute governs the prerequisites of the sale, notice of foreclosure and

publication, mechanisms of the sale, and redemption." *Ibid.* (citing Mich. Comp. Laws § 600.3201

*et seq.*).  Section 600.3204 provides:

> [A] party may foreclose a mortgage by advertisement if all of the following
> circumstances exist:
> (a) A default in a condition of the mortgage has occurred, by which the power to sell
> became operative.
> (b) An action or proceeding has not been instituted, at law, to recover the debt
> secured by the mortgage or any part of the mortgage; or, if an action or proceeding
> has been instituted, the action or proceeding has been discontinued; or an execution
> on a judgment rendered in an action or proceeding has been returned unsatisfied, in
> whole or in part.
> (c) The mortgage containing the power of sale has been properly recorded.
> (d) The party foreclosing the mortgage is either the owner of the indebtedness or of
> an interest in the indebtedness secured by the mortgage or the servicing agent of the
> mortgage.

Mich. Comp. Laws § 600.3204(1).  "If the party foreclosing a mortgage by advertisement is not the

original mortgagee, a record chain of title shall exist prior to the date of sale under section 3216

evidencing the assignment of the mortgage to the party foreclosing the mortgage."  Mich. Comp.

Laws § 600.3204(3).

Michigan courts have differentiated between a foreclosing entity's failure to satisfy section

600.3204(1)'s requirements and a failure to abide by the notice requirements set forth in sections

600.3208 and 600.3212.  *See Rainey v. U.S. Bank Nat. Ass'n*, No. 11-12520, 2011 WL 5075700

(E.D. Mich. Oct. 25, 2011).  A failure to satisfy section 600.3204(1)'s demands constitutes "a

structural defect that goes to the very heart of defendant's ability to foreclose by advertisement in

the first instance" and renders the foreclosure proceedings void *ab initio*, while "a defect in fulfilling

the statutory notice requirements attendant to a foreclosure by advertisement renders the resulting

sale voidable rather than absolutely void."  *Davenport v. HSBC Bank USA*, 275 Mich. App. 344,

-11-

347-48, 739 N.W.2d 383, 384-85 (2007).  The plaintiffs do not allege a notice defect; rather, they allege a structural defect in violation of section 600.3204(1)(d).

The plaintiffs, citing *Bakri v. Mortgage Electronic Registration System*, No. 297962, 2011 WL 3476818 (Mich. Ct. App. Aug. 9, 2011); *Richard v. Schneiderman & Sherman, P.C.*, 294 Mich. App. 31, --- N.W.2d ---, 2011 WL 3760862 (Mich. Ct. App. Aug. 25, 2011); and *Residential Funding Co., LLC v. Saurman*, 292 Mich. App. 321, 807 N.W.2d 412 (2011), argue that CitiMortgage's foreclosure by advertisement is retroactively void *ab initio* because CitiMortgage was not the owner of the plaintiff's indebtedness nor had an interest in the plaintiffs' indebtedness in violation of Mich. Comp. Laws § 600.3204(1)(d).  The plaintiffs argue that MERS was never given the right to sell or assign the note and mortgage.  Presumably the argument is that MERS, because it could not foreclose itself, cannot assign someone else authority to do so.

The plaintiffs' argument, however, is without merit because the Michigan Supreme Court vacated the decision in *Richard*, *see Richard v. Schneiderman & Sherman, P.C.*, 490 Mich. 1001, 807 N.W.2d 324 (2012), and reversed the judgment of the court of appeals and held that MERS, acting as nominee of the lender, had a security lien on the property and was authorized to foreclose by advertisement, *Residential Funding Co., LLC v. Saurman*, 490 Mich. 909, 805 N.W.2d 183 (2011).  The defendant had authority to initiate foreclosure by advertisement proceedings.

## 2.  Loan modification

The plaintiffs allege in their complaint that Michigan Compiled Laws § 600.3205a requires certain steps to be taken before a sale, and the defendant did not follow them.  They posit that because the defendant did not comply with the statutory loan modification procedure, the foreclosure is void.

-12-

Both Michigan Compiled Laws §§ 600.3204 and 600.3205 have been amended since the events that form the basis of this complaint. The amendments do not affect the issues presented here, however; the Court will apply the version of the statutes in effect at the time of the foreclosure, since that version prescribed the applicable procedure in effect at the time.

A party may not begin foreclosure by advertisement proceedings if any of the following apply:

> (a) Notice has not been mailed to the mortgagor as required by section 3205a.
> (b) After a notice is mailed to the mortgagor under section 3205a, the time for a housing counselor to notify the person designated under section 3205a(1)(c) of a request by the mortgagor under section 3205b(1) has not expired.
> (c) Within 14 days after a notice is mailed to the mortgagor under section 3205a, the mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c) and 90 days have not passed after the notice was mailed.
> (d) The mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c), the mortgagor has provided documents if requested under section 3205b(2), and the person designated under section 3205a(1)(c) has not met or negotiated with the mortgagor under this chapter.
> (e) The mortgagor and mortgagee have agreed in writing to modify the mortgage loan and the mortgagor is not in default under the modified agreement.
> (f) Calculations under section 3205c(1) show that the mortgagor is eligible for a loan modification and foreclosure under this chapter is not allowed under section 3205c(7).

Mich. Comp. Laws § 600.3204(4) (2009).  The notice required by section 3205a must include "a list of housing counselors prepared by the Michigan state housing development authority."  Mich. Comp. Laws § 600.3205a(1)(d) (2009).

"A borrower who wishes to participate in negotiations to attempt to work out a modification of a mortgage loan shall contact a housing counselor from the list provided under section 3205a within 14 days after the list is mailed to the borrower." Mich. Comp. Laws § 600.3205b(1) (2009). The housing counselor, if contacted by a borrower, "shall schedule a meeting between the borrower

-13-

and the person [who has authority to enter into loan modifications] to attempt to work out a modification of the mortgage loan." *Id.* § 600.3205b(3).

If a borrower has contacted a housing counselor under section 3205b but the process has not resulted in an agreement to modify the mortgage loan, the person designated under section 3205a(1)(c) shall work with the borrower to determine whether the borrower qualifies for a loan modification. Mich. Comp. Laws § 600.3205c(1) (2009). If the "person designated under section 3205a(1)(c)" is required to work with the borrower, he "shall provide the borrower with . . . [a] copy of any calculations made under this section." *Id.* § 600.3205c(5). The statute states that when a borrower is eligible for a loan modification, the mortgage holder may not pursue foreclosure by advertisement unless it offers the borrower a modification agreement and the borrower fails to accept it within 14 days. *Id.* § 600.3205c(7). If the mortgage holder nonetheless commences foreclosure proceedings in violation of this statute, the borrower may bring suit to "convert the foreclosure proceeding to a judicial foreclosure." *Id.* § 600.3205c(8). However, conversion into judicial foreclosure is only available if "the court determines that the borrower participated in the process under section 3205b, a modification agreement was not reached, and the borrower is eligible for modification under subsection (1), and subsection (7) does not apply." *Ibid.*

The plaintiffs state in their complaint that the defendant failed to complete the loan modification process and failed to send the plaintiffs a denial letter with the required calculations before the sheriff's sale. However, the complaint fails to allege that the plaintiffs contacted a housing counselor within the time required by section 600.3205b, or at any time thereafter. Under the statute's plain language, the defendant's section 600.3205c obligations were never triggered. Other courts that have addressed the argument also have found that mortgagors may not seek relief

-14-

under section 600.3205c(8) unless they comply with the statutory requirements. *See Tawfik v. BAC Home Loans Servicing, LP*, No. 11-12590, 2011 WL 6181441, at *4 (E.D. Mich. Dec. 13, 2011); *Galati v. Wells Fargo Bank*, No. 11-11487, 2011 WL 5178276, at *5 (E.D. Mich. Nov. 1, 2011); *Carl v. BAC Home Loans Servicing, LP*, No. 11-11255, 2011 WL 3203086, at *3 (E.D. Mich. July 27, 2011).

If that failure amounted to merely a pleading defect, it could be ameliorated by amending the complaint to include allegations that the plaintiffs contacted a housing counselor, if in fact they had done so. At oral argument, however, plaintiffs' counsel acknowledged that no contact was made before the sheriff's sale occurred. Moreover, it appears that even if the defendant had a duty to complete the loan modification process and send a denial letter with the required calculations before the sheriff's sale, the plaintiffs are no longer entitled to any statutory relief, which is limited to converting a foreclosure by publication into a judicial foreclosure. *Benford v. CitiMortgage, Inc.*, No. 11-12200, 2011 WL 5525942, at *5 (E.D. Mich. Nov. 14, 2011) ("The statute plainly requires the borrower to seek his remedy prior to the completion of the foreclosure sale, as it merely converts the proceeding into one of judicial foreclosure. A borrower may not challenge a completed foreclosure sale under this statute."); *Lessl v. CitiMortgage, Inc.*, No. 11-10871, 2011 WL 4351673, at *6 (E.D. Mich. Sept. 16, 2011) (same).

### 3.  Other irregularities

The plaintiffs allege a number of "defects" in the foreclosure, including: affidavits signed outside the presence of a notary public, and "affidavits and other documents . . . signed by persons who did not have personal knowledge of the facts asserted in the documents," Compl. ¶ 41. In

essence, the plaintiffs argue that the sheriff's sale should be set aside because the defendant or its agents robo-signed affidavits.

The defendant argues that the plaintiffs' allegations of unspecified irregularities do not concern the sale, but rather focus on an affidavit recorded with the Sheriff's Deed that sets forth CitiMortgage's compliance with Michigan Compiled Laws § 600.3205a, *et seq.* CitiMortgage argues that the execution of the affidavit was a separate event occurring on January 5, 2011, and was not a part of the January 11, 2011 sale. Moreover, the defendant argues, the execution of any such affidavit is an optional procedure and not a prerequisite to a valid sheriff's sale. *See* Mich. Comp. Laws §§ 600.3204, .3256. CitiMortgage argues that such affidavits are a permitted device to create presumptive evidence of the facts contained within them. *See* Mich. Comp. Laws § 600.3256.

Section 600.3256 provides:

> Any party desiring to perpetuate the evidence of any sale made in pursuance of the provisions of this chapter, *may* procure:
> (a) An affidavit of the publication of the notice of sale, and of any notice of postponement, to be made by the publisher of the newspaper in which the same was inserted, or by some person in his employ knowing the facts; and
> (b) An affidavit of the fact of any sale pursuant to such notice, to be made by the person who acted as auctioneer at the sale, stating the time and place at which the same took place, the sum bid, and the name of the purchaser; and
> (c) An affidavit setting forth the time, manner and place of posting a copy of such notice of sale to be made by the person posting the same.

Mich. Comp. Laws § 600.3256 (emphasis added). "Such affidavits . . . shall be presumptive evidence of the facts therein contained." Mich. Comp. Laws § 600.3264.

The defendant is correct. The challenged affidavits were neither mandatory nor a necessary prerequisite to foreclosure. *Prentice v. Bank of New York Trust Co.*, No. 283789, 2009 WL 1139332, at *1-2 (Mich. Ct. App. Apr. 28, 2009) ("Pursuant to the . . . clear and unambiguous statutory language, such an affidavit was not mandatory. . . . [T]he language of the statute is clearly

-16-

permissive; it provides that a party *may* perpetuate evidence of the sale by recording an affidavit.").

Any defects in the affidavits — if indeed there are any — provide no basis on which to set aside the

sheriff's sale.

### C.  Quiet title

The defendant contends that the plaintiffs' count to quiet title is an equitable action that is

subject to the laches bar if not brought timely.  The defendant argues that the eight-month delay in

filing suit after the sheriff's sale operates as such a bar and requires dismissal of that count.  The

Court believes that the quiet title count cannot proceed, but not for the reasons advanced by the

defendant.

In Michigan a quiet title action is a statutory cause of action.  Michigan Compiled Laws

§ 600.2932(1) states that "[a]ny person, whether he is in possession of the land in question or not,

who claims any right in, title to, equitable title to, interest in, or right to possession of land, may

bring an action in the circuit courts against any other person who claims or might claim any interest

inconsistent with the interest claimed by the plaintiff."  That statute "codifie[s] actions to quiet title

and authorize[s] suits to determine competing parties' respective interests in land."  *Republic Bank*

*v. Modular One LLC*, 232 Mich. App. 444, 448, 591 N.W.2d 335, 337 (1998), *overruled on other*

*grounds by Stokes v. Millen Roofing Co.*, 466 Mich. 660, 649 N.W.2d 371 (2002).  A party seeking

to establish clear title has the burden of proof in a quiet title action and must make out a *prima facie*

case that they have title to the disputed land.  *Beulah Hoagland Appleton Qualified Pers. Residence*

*Trust v. Emmet Cnty. Rd. Comm'n*, 236 Mich. App. 546, 550, 600 N.W.2d 698, 700 (1999) (citing

*Stinebaugh v. Bristol*, 132 Mich. App. 311, 316, 347 N.W.2d 219 (1984)).  If the plaintiff establishes

a *prima facie* case, the burden of proof shifts to the contestant to establish superior right or title to

-17-

the property. *Beulah*, 236 Mich. App. at 550, 600 N.W.2d at 700 (citing *Boekeloo v. Kuschinski*, 117 Mich. App. 619, 629, 324 N.W.2d 104 (1982)).

The plaintiffs "claim as interest in the [property] as follows: Fee Simple Absolute by way of an executed Warranty Deed." Compl. ¶ 5. The plaintiffs' also acknowledge that the defendant claims "an interest in the same property . . . by way of a Sheriff's Deed." *Id.* ¶ 6.

It is undisputed that a sheriff's sale occurred and that the redemption period has expired. Under Michigan law, a mortgagor is stripped of title to, and any right in, the foreclosed property if the mortgagor fails to redeem the property within the redemption period. Mich. Comp. Laws § 600.3236. Section 600.3236 provides:

> Unless the premises described in such deed shall be redeemed within the time limited for such redemption as hereinafter provided, such deed shall thereupon become operative, and shall vest in the grantee therein named, his heirs or assigns, all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage, or at any time thereafter, except as to any parcel or parcels which may have been redeemed and canceled, as hereinafter provided; and the record thereof shall thereafter, for all purposes be deemed a valid record of said deed without being re-recorded, but no person having any valid subsisting lien upon the mortgaged premises, or any part thereof, created before the lien of such mortgage took effect, shall be prejudiced by any such sale, nor shall his rights or interests be in any way affected thereby.

Upon expiration of the redemption period on July 11, 2011, the defendant was granted all right, title, and interest in the property. The plaintiffs have not alleged any error in the foreclosure or sheriff's sale that could void the deed or deprive the defendant of that right. Therefore, the plaintiffs have not — and cannot — state a quiet title claim as a matter of law.

The defect in the quiet title count has nothing to do with the complaint's filing date. Therefore, the Court need not reach the merits of the defendant's laches argument.

D. Unjust enrichment

-18-

The plaintiffs allege in count two of their complaint that the defendant was unjustly enriched by retaining the property and maintaining the right to seek a deficiency judgment against them. However, the plaintiff cannot recover under a theory of unjust enrichment — a quasi-contract theory — because a written contract actually governs the parties' relationship. The promissory note establishes the defendant's right to receive payments from the plaintiffs and the mortgage includes a power of sale. Therefore, the plaintiffs have not pleaded that the defendant received a benefit to which it was not entitled. The plaintiff counters that he is entitled to a judgment for unjust enrichment because the defendant has legal title to the property, received the proceeds of the sheriff's sale, and can sue the plaintiffs for any deficiency.

The defendant has the better argument. Under Michigan law, to plead a claim of unjust enrichment, a plaintiff must establish that the defendant has received and retained a benefit from the plaintiff and inequity has resulted. *Fodale v. Waste Mgmt. of Michigan, Inc.*, 271 Mich. App. 11, 36, 718 N.W.2d 827, 841 (2006). Michigan courts will then imply a contract to prevent unjust enrichment. *Ibid*. However, courts will not imply a contract where there is an express contract governing the same subject matter. *Ibid*.

Here, as in *Fodale*, there is an express contract governing the contested matter. *See Fodale*, 271 Mich. App. at 37, 718 N.W.2d at 841. The parties' rights and obligations on the loan are clearly expressed in the promissory note and the mortgage. Moreover, the complaint is utterly devoid of any factual allegations regarding the purported benefit the defendant received. Thus, the plaintiffs fail to state a viable claim of unjust enrichment. *See ibid.*

H. Deceptive acts and unfair practices

-19-

Count four of the complaint alleges only that the purported robo-signing "constitute[s] a deceptive act or unfair practice or otherwise violate[s] state laws." Compl. ¶ 43. The defendant argues that this count seeks nothing more than a reversal of the sheriff's sale and should be dismissed for the same reasons as discussed above. That count merely restates the robo-signing allegations made in the earlier counts.

The defendant also argues that there is no common law cause of action under Michigan law for deceptive acts or unfair practices. There are a number of Michigan laws that prohibit deceptive and unfair business practices. The Court will limit its discussion to two of them, although there likely are more. However, plaintiffs' counsel failed to identify any statutory causes of action.

### 1. Michigan Consumer Protection Act

The Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.* prohibits unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce. Mich. Comp. Laws § 445.903(1). Such practices include, but are not limited to:

> (n) Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.
> (s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.
> (bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

*Ibid.*

It is unclear whether the Consumer Protection Act would apply to the defendant because it exempts from liability "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws § 445.904(1)(a); *Brown v. Bank of New York Mellon*, No. 10-550, 2011 WL

206124, at *7 (W.D. Mich. Jan. 21, 2011) (exempting mortgage servicer from Consumer Protection Act because defendant was licensed as First Mortgage Registrant pursuant to the Mortgage Brokers, Lenders, and Servicers Licensing Act). Even if the Act applies to the defendant, the plaintiffs' complaint has neither identified the provisions of § 445.903 that they believe have been breached nor provided a plausible set of allegations from which the Court could assess their entitlement to relief. The Consumer Protection Act does not save the complaint.

### 2. Mortgage Brokers, Lenders, and Servicers Licensing Act

It is a violation of the Mortgage Brokers, Lenders, and Servicers Licensing Act for a licensee or registrant to "[e]ngage in fraud, deceit, or material misrepresentation in connection with any transaction governed by this act." Mich. Comp. Laws § 445.1672(b). However, the complaint fails to state a claim under the Mortgage Brokers, Lenders, and Servicers Licensing Act because the plaintiffs have not pleaded factual allegations with the specificity required for allegations of fraud that is plausible on its face. *See* Fed. R. Civ. P. 9(b).

### 3. Innocent misrepresentation and constructive fraud

The plaintiffs also argue that their complaint states a cause of action for innocent and constructive misrepresentation (presumably the plaintiffs mean constructive fraud).

"The elements of innocent misrepresentation are: False and fraudulent misrepresentations made by one party to another (1) in a transaction between them, (2) any representation which is false in fact, (3) and actually deceive the other (4) are relied on by him to his damage are actionable, irrespective of whether the person making them acted in good faith in making them, (5) where the

loss of the party deceived inures to the benefit of the other." *McKind v. Palms Investments, L.L.C.*, No. 273138, 2007 WL 1342557, at *5 (Mich. Ct. App. May 8, 2007) (citing *Phillips v. Gen Adjustment Bureau*, 12 Mich. App 16, 20, 162 N.W.2d 301 (1968)).

Constructive fraud is an actual fraud without the element of intent. *See General Elec. Credit Corp. v. Wolverine Ins. Co.*, 420 Mich. 176, 188-90, 362 N.W.2d 595, 601 (1984). In other words, "the distinction between actual fraud and constructive fraud is that actual fraud is an intentional misrepresentation that a party makes to induce detrimental reliance, while constructive fraud is a misrepresentation that causes the same effect, but without a purposeful design to defraud." *Feldkamp v. Farm Bureau Ins. Co.*, No. 272855, 2009 WL 103223, at *5 (Mich. Ct. App. Jan.15, 2009).

The complaint does not include claims for innocent misrepresentation or constructive fraud, but even if it did, those claims must be dismissed for failure to state a claim upon which relief can be granted. The complaint is devoid of any factual allegations regarding the elements of the two causes of action. Moreover, even if the Court assumes the affidavits were robo-signed, the plaintiffs cannot establish reasonable reliance on them because they were not necessary for the foreclosure and sheriff's sale.

### III.

The Court finds that the plaintiffs have not set out factual allegations in their complaint that could support any of their stated theories for relief. The complaint does not state claims for which relief can be granted.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss [dkt. #6] is **GRANTED**.

-22-

It is further **ORDERED** that the complaint is dismissed with prejudice.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   August 21, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 21, 2012.

s/Deborah R. Tofil
DEBORAH R. TOFIL

---